UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 AUG 11 PM 2:36

CLERK
BY_____
DEPUTY CLERK

JAMAL HALL,

      Plaintiff,

v.

RYAN ASHE, individually and
in his official capacity; and
JEREMY SULLIVAN,
individually and in his official capacity,

      Defendants.

Case No. 2:21-cv-00130

**OPINION AND ORDER GRANTING DEFENDANT JEREMY SULLIVAN'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 90)

    Plaintiff Jamal Hall brings this action against Defendants Jeremy Sullivan ("Defendant Sullivan") and Ryan Ashe ("Defendant Ashe") arising out of Plaintiff's arrest in Rutland, Vermont, on August 2, 2018. The Second Amended Complaint asserts two claims: a violation of Plaintiff's Fourth and Fourteenth Amendment rights against excessive force under 42 U.S.C. § 1983 (Count I), and a violation of Plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches and seizures under 42 U.S.C. § 1983 (Count II).

    Pending before the court is Defendant Sullivan's November 14, 2024 motion for summary judgment, wherein he argues that Plaintiff has failed to establish Defendant Sullivan participated in the alleged search of Plaintiff. Defendant Sullivan further contends he is entitled to judgment as a matter of law because his use of force was reasonable under the circumstances. Alternatively, Defendant Sullivan contends that qualified immunity bars Plaintiff's excessive force claim. (Doc. 90.) Plaintiff filed his

opposition on February 11, 2025, (Doc. 96), and Defendant Sullivan replied on March 25, 2025, (Doc. 100), at which point the court took the pending motion under advisement.

Plaintiff is represented by Brooks G. McArthur, Esq. Defendant Sullivan is represented by David R. Groff, Esq., and Zachary J. Chen, Esq. Defendant Ashe is represented by Kaveh S. Shahi, Esq.

## I.    Factual Record on Summary Judgment.

Defendant Sullivan argues that Plaintiff has not properly disputed the facts in his Statement of Undisputed Material Facts ("SUMF") because, although Plaintiff filed a Statement of Disputed Material Facts ("SDMF"), he did not respond directly to each paragraph of Defendant Sullivan's SUMF. Pursuant to Fed. R. Civ. P. 56(e), a court may consider a fact "undisputed for purposes of the motion[]" for summary judgment "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)[.]" The District of Vermont's Local Rule 56(b) provides that "[a] party opposing summary judgment . . . must include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs, admitting, denying, or otherwise responding to each numbered paragraph in the moving party's statement."

Courts will not "hunt through voluminous records without guidance from the parties." *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (alteration and internal quotation marks omitted) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009)). Accordingly, "[a]ll material facts in the movant's statement of undisputed facts are deemed to be admitted unless controverted by the opposing party's statement." *Moore v. Bitca*, 2020 WL 5821378, at *3 (D. Vt. Sept. 30, 2020) (internal quotation marks omitted) (quoting *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013)).

The failure to dispute the moving party's facts is not dispositive. Defendant's "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion" in a Rule 56 Statement of Facts, *Holtz*, 258 F.3d at 73, because an opposing party's noncompliance with a procedural rule "does not absolve the party seeking

2

summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Holtz*, 258 F.3d at 74).

To the extent that Plaintiff has not directly responded to a properly supported factual statement in the SUMF, the court will deem it admitted. However, it will not grant summary judgment by default. *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (finding error in the district court's grant of summary judgment "solely for failure to file opposing papers" without "assess[ing] whether the defendants had met their burden to demonstrate that summary judgment was appropriate"); *Moore*, 2020 WL 5821378, at *3 ("[C]onsidering plaintiff's statement of disputed material facts even though plaintiff 'proffers additional facts and makes legal arguments in his Statement' instead of 'contradicting the factual statements made in defendant's Statement of Undisputed Material Facts' and admitting as true undisputed facts plaintiff did 'not respond to or controvert'") (quoting *Chaney v. Stewart*, 2015 WL 1538021, at *1 n.2 (D. Vt. Apr. 7, 2015)). The court will therefore consider Plaintiff's additional facts to the extent they are material. *See Mooers v. Middlebury Coll.*, 2024 WL 4519182, at *2 (D. Vt. Oct. 17, 2024).

## II.   Undisputed Facts.

At all relevant times, Defendant Sullivan was employed as a law enforcement officer with the Vermont State Police ("VSP") and was stationed at VSP's Rutland barracks. Through his work for the VSP, Defendant Sullivan became aware that Plaintiff was connected with a bar shooting in Rutland in the summer of 2018. He also knew there was a warrant for Plaintiff's arrest.

On August 2, 2018, Defendant Sullivan was informed by another trooper that Jennifer L. Hughes, Plaintiff's girlfriend, "had reported that Plaintiff had stolen or taken her car without permission, gone to New York, and would be returning to Vermont at some point." (Doc. 90-1 at 1, ¶ 7.) The vehicle was a blue Honda Civic registered to Ms. Hughes (the "stolen Honda"). When Defendant Sullivan began his August 2 shift at 5:00

p.m., he was assigned to assist day shift troopers in locating Plaintiff and the stolen Honda. In furtherance of their search, Defendant Sullivan and another VSP trooper stationed themselves along U.S. Route 7 in Mount Tabor, Vermont. From his cruiser, Defendant Sullivan identified an African-American male, later identified as Plaintiff, driving a blue Honda Civic that resembled the stolen Honda. After confirming the vehicle was registered to Ms. Hughes, Defendant Sullivan activated his cruiser's lights and siren. Plaintiff initially appeared to pull over but then sped away.

Thereafter, Plaintiff led Defendant Sullivan and other law enforcement officers on a thirteen-minute high-speed chase northbound on Route 7. During the chase, Plaintiff reached speeds of over 100 miles per hour in areas with speed limits ranging from 35 to 55 miles per hour. Plaintiff used the right shoulder of the highway to pass northbound traffic and repeatedly crossed the road's center line, driving towards oncoming traffic. At one point, Plaintiff drove over a grassy median to enter the southbound lanes of Route 7 "against oncoming southbound traffic for over 50 seconds at speeds reaching 90 miles per hour[,]" *id.* at 3, ¶ 27, before crossing the median again to enter the northbound lane. Several sets of tire spikes were used to slow Plaintiff's speed. He continued, however, to operate the stolen Honda even after it lost two of its tires.

Throughout the car chase, Plaintiff was pursued by at least one cruiser with flashing lights and sirens. The car chase ended when Plaintiff collided with an occupied vehicle in Rutland City. Plaintiff immediately exited the stolen Honda, fleeing on foot across a five-lane highway in heavy traffic. Believing Plaintiff posed a danger to the public, Defendant Sullivan, as well as other VSP and Rutland City Police ("RCP") officers, gave chase. "While pursuing Plaintiff on foot, [Defendant] Sullivan unsuccessfully attempted to deploy his [T]aser against Plaintiff." *Id.* at 4, ¶ 35. The Taser's probes became embedded in Plaintiff's jacket instead of Plaintiff's body. Unaffected by Defendant Sullivan's attempt to tase him, Plaintiff removed his jacket and continued fleeing.

Law enforcement's foot pursuit ended at a fairground when Plaintiff voluntarily surrendered by lying on the ground. Defendant Sullivan reached Plaintiff at

approximately the same time as other VSP and RCP officers. He briefly attempted to handcuff Plaintiff. His efforts, however, were interrupted when another law enforcement officer deployed his Taser. Defendant Sullivan required assistance untangling himself from the probes of the discharged Taser and removing the probes from his collar. As a result, he "had no more direct involvement in subduing, handcuffing[,] or searching Plaintiff." *Id.* at 5, ¶ 44. Plaintiff is unable to identify the law enforcement officer who tased him or who handcuffed him. After Plaintiff's arrest, "[Defendant] Sullivan did not observe any search of Plaintiff's body cavity at any point." *Id.* at ¶ 48.

Based on the events of August 2, 2018, Plaintiff was convicted in Vermont Superior Court:

> [O]f one misdemeanor count of reckless endangerment in violation of 13 V.S.A. § 1025, one felony count of eluding a law enforcement officer by negligent operation in violation of 23 V.S.A. § 1133(b)(2), and one count of leaving the scene of a crash involving property damage in violation of 23 V.S.A. § 1128(a).

*Id.* 5, ¶ 49. Plaintiff was later convicted in the District of Vermont of one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

### III. Whether There Are Disputed Facts.

Plaintiff avers that VSP and RCP officers conducted a cavity search of his rectum at the fairground:

> Multiple [VSP] Troopers and [RCP] officers searched [Plaintiff's] body. After searching his pockets, shoes, and socks, a[n RCP] officer exclaimed to check [Plaintiff's] rectum. [Plaintiff] then received a public cavity search as one officer held [Plaintiff's] leg in the air and inserted multiple fingers between his buttocks and around in his rectum. Not a single officer intervened.

(Doc. 96-1, at 2, ¶ 8.) There is no evidence that Defendant Sullivan participated in this search if it took place. The only evidence it did so is Plaintiff's affidavit. At the time, Plaintiff was under the influence of Ecstasy, which "altered [his] perception of events." (Doc. 90-1 at 2, ¶¶ 16, 17.)

IV.  **Conclusions of Law and Analysis.**

A.  **Standard of Review.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (internal quotation marks omitted) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Not all disputed issues of fact, however, preclude summary judgment. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### B.    Qualified Immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "When a defendant moves for summary judgment based on qualified immunity, courts consider whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (citation and internal quotation marks omitted) (alteration in original). For excessive force claims, the court applies the "same" standard of "objective reasonableness" as it applies to the qualified immunity claim. *Collado v. City of New York*, 396 F. Supp. 3d 265, 274 n.11 (S.D.N.Y. 2019); *see also O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) ("[I]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits.") (citation and internal quotation marks omitted).

Whether a defendant's conduct is objectively reasonable for qualified immunity purposes "is always a question of law for the court." *Gonzales v. Duran*, 590 F.3d 855, 864 (10th Cir. 2009); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (observing that if there are no "disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court[]"). However, where there are disputed issues of material fact, a determination of qualified immunity is often inappropriate at the

summary judgment stage. *See Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) (nothing that "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness") (alteration in original) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)); *see also Jok v. City of Burlington, Vermont*, 96 F.4th 291, 297-98 (2d Cir. 2024) (dismissing defendant's appeal of opinion denying summary judgment because the district court's decision on qualified immunity turned on disputed facts).

### C. Whether Defendant Sullivan Is Entitled to Summary Judgment on Plaintiff's Excessive Force Claim Brought Under 42 U.S.C. § 1983 (Count I).

42 U.S.C. § 1983 "is not itself a source of substantive rights" but provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A claimant must establish the person who committed the violation was acting "under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (internal quotation marks omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). He or she also "must p[rove] that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (alteration in original).

The Fourth Amendment governs "a claim for excessive force after [the plaintiff] has been arrested and detained, but 'prior to the time when [the person arrested] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989)). "To establish a claim of excessive force, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment

8

standards." *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (internal quotation marks and citation omitted). Reasonableness in the Fourth Amendment context is not "an easy-to-apply legal test" and requires courts to "slosh [their] way though [a] factbound morass[.]" *Scott v. Harris*, 550 U.S. 372, 383 (2007). This fact-specific inquiry "requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Factors to consider include: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* "Though the Second Circuit has not yet ruled on the issue, many courts have viewed the 'immediate threat to the safety of the officers or others' as the most important . . . factor." *Ramos v. Town of E. Hartford*, 2019 WL 2785594, at *7 (D. Conn. July 2, 2019) (quoting *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)). "A plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive." *Cugini*, 941 F.3d at 608. Whether the use of force was reasonable "must [be] judge[d] . . . from the perspective of a reasonable officer on the scene[]" and embody "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

In this case, Plaintiff led VSP and RCP officers on a high-speed car chase which posed a direct and substantial risk to the officers and to public safety. This, in turn, necessitated an aggressive response. When Plaintiff left the stolen Honda on foot in heavy traffic, the responding officers did not know whether he was armed. He was wanted not only for the potentially stolen vehicle, but he was subject to an arrest warrant for his role in a 2018 bar shooting. The "crime in question was [] arguably more serious because [Plaintiff] was unquestionably resisting arrest which, in turn, only further

9

bolstered [Defendant Sullivan's] presumption that [Plaintiff] was a fugitive seeking to evade potentially serious charges." *Tracy*, 623 F.3d at 98. The nature and severity of the crimes authorized the use of reasonable force to apprehend Plaintiff. *See United States v. Patterson*, 25 F.4th 123, 143 (2d Cir. 2022) (finding "it was entirely appropriate for officers" to outnumber suspects, block a vehicle's exit, use loudspeakers and raised voice, and draw their firearms "while they ascertained whether [a] vehicle's occupants" were in fact "armed assailants and ensured that the occupants could not use any firearm to cause harm[]").

Plaintiff contends it was unreasonable for Defendant Sullivan to deploy his Taser multiple times after he had surrendered and was on the ground and subsequently employ force while handcuffing him. Defendant Sullivan, however, only deployed his Taser once prior to Plaintiff's surrender, and his Taser did not make contact with Plaintiff's body. Thereafter, Defendant Sullivan briefly attempted to handcuff Plaintiff, but Defendant Sullivan's efforts were interrupted when he was inadvertently tased by another law enforcement officer. Defendant Sullivan and Plaintiff did not interact thereafter.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Thomas v. City of New York*, 2025 WL 1233184, at *4 (S.D.N.Y. Apr. 29, 2025) (internal quotation marks omitted) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). A plaintiff can establish a defendant's personal involvement by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Chislett v. N.Y. City Dep't of Educ.*, 723 F. Supp. 3d 285, 294 (S.D.N.Y. 2024) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (alteration in original)).

In this case, Plaintiff does not dispute that, after his surrender, once Defendant Sullivan was himself tased, he "was no longer involved in subduing or handcuffing Plaintiff." (Doc. 90-1 at 5, ¶ 43.) Plaintiff further does not dispute that he "cannot identify anyone who tased him" or "who placed him in handcuffs." *Id.* at 5, ¶¶ 45, 46. The evidence Plaintiff adduces is therefore insufficient to establish Defendant Sullivan played any personal role in any constitutional violation. As a result, Defendant Sullivan did not violate Plaintiff's Fourth Amendment rights.

For the reasons set forth above, the court GRANTS Defendant Sullivan's motion for summary judgment on Plaintiff's excessive force claim. *See Goodall v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 725 F. Supp. 3d 248, 269 (N.D.N.Y. 2024) (granting defendants' motion for summary judgment on plaintiff's § 1983 claim where plaintiff "ha[d] not shown that [defendant] was personally involved in the alleged violation of his [constitutional] rights[]").

### D.  Whether Defendant Sullivan is Entitled to Summary Judgment on Plaintiff's Unreasonable Search Claim Brought Under 42 U.S.C. § 1983 (Count II).

Defendant Sullivan contends summary judgment is warranted on Plaintiff's unreasonable search and seizure claim because Plaintiff has failed to establish Defendant Sullivan was personally involved in searching him. Defendant Sullivan asserts that he "did not participate in searching Plaintiff at the fairground[,]" (Doc. 90-1 at 5, ¶ 47), and he "did not observe any search of Plaintiff's body cavity at any point." *Id.* at ¶ 48.

Plaintiff identifies Defendant Ashe as the individual who conducted the alleged cavity search. There is no evidence that Defendant Sullivan witnessed or participated in this search in any way. He thus could not have intervened. As a result, even if VSP and/or RCP officers searched Plaintiff's rectum as he contends, no rational jury could find Defendant Sullivan's personal involvement in the alleged constitutional violation. *See Murphy v. Cnty. of Chemung*, 2024 WL 3228056, at *10 (W.D.N.Y. June 28, 2024) ("Defendant . . . has demonstrated that he is entitled to summary judgment because

[p]laintiffs have failed to raise a genuine dispute of material fact as to his personal involvement in the alleged violations of [p]laintiffs' Fourth Amendment rights.")

For the foregoing reason, the court GRANTS Defendant Sullivan's motion for summary judgment on Plaintiff's unreasonable search and seizure claim.

## CONCLUSION

For the foregoing reasons, the court GRANTS summary judgment for Defendant Sullivan on all counts of Plaintiff's Second Amended Complaint. (Doc. 90.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 11th day of August, 2025.

Christina Reiss, Chief Judge
United States District Court